**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

| | | |
|---|---|---|
| PRIME MORTGAGE LENDING, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 5:18-CV-30 |
| v. | ) ) | JURY TRIAL DEMANDED |
| ADAM COHN, | ) ) ) | |
| Defendant. | ) ) | |

## **VERIFIED COMPLAINT**

Plaintiff Prime Mortgage Lending, Inc. ("Prime"), by and through its undersigned counsel, files this Verified Complaint against Defendant Adam Cohn, and alleges as follows:

### **NATURE OF THE ACTION**

1. This action arises out of the acts of a former Prime employee, Adam Cohn, who has violated the trust and confidence Prime placed in him, and has willfully and wantonly misappropriated Prime's confidential information and trade secrets in violation of Cohn's contractual obligations to Prime and state and federal law.

2. On or about January 4, 2018, Cohn resigned from Prime to join one of Prime's competitors in the mortgage lending industry. In doing so, Cohn stole vast amounts of Prime's most valuable and proprietary data and information.

3. Prime has repeatedly urged Cohn to abide by his contractual and legal obligations to Prime and return the stolen data and information. Cohn has refused to do so, necessitating the instant lawsuit.

## PARTIES

4. Plaintiff Prime is a corporation organized and existing under the laws of the State of North Carolina and maintains its principal place of business in Apex, North Carolina.

5. Defendant Cohn is an adult individual who, upon information and belief, resides in Delray Beach, Florida.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836. This Court has jurisdiction over Prime's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

7. Venue is proper in this Court because a substantial part of the events giving rise to the dispute occurred in this this District, including the theft of Confidential Information and trade secrets that were maintained in this District and the resulting harm from the theft.

## FACTUAL ALLEGATIONS

### Prime's Business and Trade Secrets

8. Prime is a mortgage lending institution that provides financial services and mortgage programs to current and potential homeowners. Prime operates in twenty-seven states, including North Carolina.

9. The mortgage lending industry is a highly competitive business in which a lending institution's competitive advantage is substantially dependent upon its ability to obtain and maintain confidential information relating to clients, prospective clients, leads, and referral sources.

10. Accordingly, Prime has compiled and maintains extensive data pertaining to prospective clients, leads, and inquiries, and all information pertaining to the sources of those

inquiries and leads. Included in this confidential information is substantial amounts of non-public personal information regarding borrowers and prospective borrowers.

11. In addition, mortgage lending institutions like Prime necessarily compile and maintain volumes of confidential business information, including pricing formulas, draft proposals, customer purchasing history, customer-specific pricing plans, information concerning suppliers and vendors, profit margins, margin strategies, internal costs, and future business plans.

12. All of this data and information relating to Prime's clients, products, and business (the "Trade Secrets" or "Confidential Information") is enormously valuable to Prime and highly proprietary.

13. If a competitor obtained access to this Confidential Information, it could gain an immediate competitive advantage over Prime by using the information to obtain and maintain business, to Prime's detriment.

14. For this reason, Prime carefully protects this Confidential Information by maintaining it on secure data platforms and servers that are accessible only to Prime employees with authorization to access such information.

15. In addition, Prime requires that each of its employees agree to hold Prime's Confidential Information in the strictest confidence, not to use it except for the benefit of Prime, and not to disclose it to any person without written authorization from Prime.

**Cohn Agreed to Keep Prime's Trade Secrets Confidential**

16. Prime hired Cohn as the branch manager of Prime's Boca Raton, Florida branch in February 2015. The branch subsequently moved to Delray Beach, Florida.

17. In exchange for Cohn's compensation and other benefits, Cohn agreed to abide by certain covenants designed to protect Prime's Confidential Information and Trade Secrets.

18. On February 4, 2015, Cohn signed an Employment, Confidential Information and Invention Assignment Agreement (the "Agreement"). *See* Exhibit A, attached hereto.

19. As part of the Agreement, Cohn agreed to the following provision:

> I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of [Prime] or to disclose to any person, firm or corporation without written authorization, any Confidential Information of [Prime].

Exhibit A at 30.

20. "Confidential Information" is defined under the Agreement as:

> any [Prime] proprietary information, technical data, trade secrets, or know-how, including but not limited to, research, product plans, products, services, customer lists, customers (including but not limited to customers of [Prime] on whom I called or with whom I became acquainted during the term of my employment), markers, software, developments, inventions, processes, formulas, technology, designs, drawing, engineering, hardware configuration information, marketing, finances, or other business information disclosed to me by Prime either directly or indirectly in writing orally or by drawing or observation of parts of equipment.

*Id.*

## Cohn Obtained Access to Prime's Trade Secrets
## Through the Standard Mortgage Google Email System

21. Prime operates in twenty-seven states through branch office locations that are owned by Prime and managed by Prime employees. One of these branches is located in Delray Beach, Florida, and until recently, was managed by Cohn.

22. Although Cohn was a W-2 employee of Prime, he operated the Delray Beach, Florida branch under a "fictitious business name" registration for "Standard Mortgage Co."

23. This fictitious business name is also sometimes known as an "assumed name" or "d/b/a," and it allowed Prime to do business under the name "Standard Mortgage Company" in Florida.

24. The registration was held exclusively by Prime with the Florida Division of Corporations during the period of Cohn's employment.

25. Normally, all of Prime's employees are required to use a Microsoft Exchange Server under Prime's exclusive control for all company and business-related email communications.

26. However, under a practice that began under and was approved by Prime's former Chief Executive Officer and former Chief Operating Officer, Prime allowed Cohn to use a Google Cloud-based email system (the "Google Email System"), using the email address adam@standardmortgagecompany.com.

27. Prime also allowed additional W-2 employees supervised by Cohn to use @standardmortgagecompany.com email addresses on the Google Email System.

28. During Cohn's employment with Prime, Prime maintained administrative and security privileges over the Google Email System and reimbursed Cohn for all costs associated with the Google Email System.

29. Because Cohn's work-related electronic communications were conducted exclusively through the Google Email System, Prime provided Cohn with extensive Confidential Information through the Google Email System for the exclusive use and benefit of Prime.

30. Through the Google Email System, Cohn and those employees that he supervised had access to vast amounts of Confidential Information, including but not limited to internal emails, borrower information, business plans, sales data, and pricing formulas.

**Cohn Misappropriated Prime's Confidential Information and Trade Secrets**

31. On January 4, 2018, Cohn resigned from Prime and joined Wolfe Financial Inc. d/b/a Integrity Mortgage Group, Inc. ("Integrity").

32. Integrity is one of Prime's direct competitors in the mortgage lending industry.

33. On or before his resignation on January 4, 2018, Cohn suddenly and without notice terminated Prime's administrative access to the Google Email System.

34. Prime subsequently learned that during Cohn's employment, Cohn improperly transmitted information and communications from the Google Email System to his personal email and to non-Prime employees, including his future employer and Prime's competitor, Integrity. Prime did not authorize any of these communications of Confidential Information.

35. On information and belief, Cohn is continuing to access the Google Email System and continues to improperly use and disclose Prime's Confidential Information to benefit his business at Integrity, to Prime's detriment.

**Cohn Has Refused to Return Prime's Confidential Information and Trade Secrets**

36. Following his resignation, Prime repeatedly contacted Cohn and urged him to abide by his contractual obligations to Prime, as well as state and federal law, and terminate his access to the Google Email System and return all of Prime's Confidential Information contained therein.

37. In response, Cohn has refused to terminate his access or return Prime's Confidential Information, forcing Prime to bring the instant lawsuit.

38. Specifically, Prime sent Cohn a letter the day he resigned, on January 4, 2018, reminding Cohn of his restrictive covenants and expressly demanding that Cohn not use any of Prime's trade secrets or confidential information regarding Prime's customers, business practices, and/or vendors.

39. Prime followed up with an email the next day about the Google Email System, informing Cohn that he is not entitled to access Prime's data stored on the Google Email System and that Prime needs to purge the system of all of Prime's data.

40. Prime raised the issue with Cohn again during a telephone conversion on January 9, 2018.

41. On January 18, 2018, Prime emailed and called Cohn multiple times about the Google Email System and offered to work collaboratively to retrieve Prime's Confidential Information and Trade Secrets from the system.

42. When Cohn failed to respond, Prime emailed Cohn again the next day urging him to call about the Google Email System.

43. Cohn finally responded on January 19, 2018, stating that he did not "see any way to effectively collaborate" with Prime.

44. Cohn has had multiple opportunities to comply with his contractual and legal obligations to Prime with respect to the Google Email System and has refused to do so.

## COUNT I

## VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *et seq.*

45. Primes incorporates paragraphs 1-44 above as if fully restated herein.

46. Prime derives actual and potential economic value from the Confidential Information, which is not generally known to or readily ascertainable by other persons who can obtain economic value from its disclosure or use.

47. The Confidential Information stored on the Google Email System constitutes a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

48. Prime has made reasonable efforts to maintain the secrecy of these Trade Secrets and Confidential Information.

49. These Trade Secrets and Confidential Information relate to products and/or services used in, or intended for use in, interstate or foreign commerce.

50. Cohn has improperly obtained these Trade Secrets and Confidential Information and misappropriated them, both by denying Prime access to them and by sharing them with others outside of Prime without Prime's permission or authorization.

51. On information and belief, Cohn continues to unlawfully use and disclose Prime's Trade Secrets and Confidential Information, notwithstanding Prime's repeated entreaties to Cohn to cease this unlawful conduct.

52. Cohn has acted willfully, maliciously, and in bad faith at all material times during his theft and disclosure of Prime's Trade Secrets and Confidential Information.

53. The Confidential Information stored on the Google Email System maintained its trade secret status at the time Cohn disclosed it.

54. Cohn's theft and disclosure of Prime's Trade Secrets directly and proximately caused Prime substantial damages and irreparable harm.

55. Cohn's conduct entitles Prime to damages pursuant to 18 U.S.C. § 1836(b)(3), as well as recovery of Prime's attorneys' fees under subsection (b)(3)(D).

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS, N.C. GEN. STAT. § 66-152

56. Prime incorporates paragraphs 1-55 above as if fully restated herein.

57. The Confidential Information stored on the Google Email System is not commonly known by or available to the public.

58. Prime derives actual and potential economic value from the Confidential Information stored on the Google Email System, which is not generally known to or readily ascertained by other persons who can obtain economic value from its disclosure or use.

59. The Confidential Information stored on the Google Email System is the subject of Prime's reasonable efforts to maintain its secrecy.

60. Cohn stole these Trade Secrets and Confidential Information and misappropriated them by sharing them with others outside of Prime without Prime's permission or authorization.

61. Cohn's misappropriation of Prime's Trade Secrets and Confidential Information was willful and malicious.

62. The Trade Secrets and Confidential Information stored on the Google Email System maintained their trade secret status at the time Cohn disclosed them.

63. Cohn' conduct violates N.C. Gen. Stat. § 66-152.

64. Cohn's conduct directly and proximately caused Prime substantial damage and irreparable harm in an amount to be determined at trial, but substantially in excess of $75,000.

65. Cohn's conduct entitles Prime to damages pursuant to N.C. Gen. Stat. § 66-154, including punitive damages under subsection (c) and recovery of Prime's attorneys' fees under subsection (d).

## COUNT III

## BREACH OF CONTRACT

66. Prime incorporates paragraphs 1-65 above as if fully restated herein.

67. Cohn's Agreement with Prime is a valid and enforceable contract.

68. Prime has fully performed its obligations to Cohn under the terms of the Agreement.

69. Cohn has breached and is continuing to breach his contractual covenant to protect Prime's Confidential Information, including his covenant to hold the Confidential Information in strictest confidence, not to use it except for Prime's benefit, and not to disclose it to anyone without Prime's written authorization.

70. As a result of Cohn's ongoing breaches, Prime has been injured in an amount to be proven at trial, but substantially in excess of $75,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

1. That judgment be entered in its favor and against Cohn;

2. That Cohn be permanently enjoined from misappropriating Prime's Trade Secrets.

3. That Prime be awarded actual damages as may be proven as a result of Cohn's wrongdoing;

4. That Prime be awarded punitive damages;

5. That Prime be awarded its reasonable expenses of litigation and attorneys' fees against Cohn; and

6. That Prime be awarded such further relief as the Court deems just and proper under the circumstances.

Jury trial demanded.

Dated: January 26, 2018

*/s/ Matthew P. McGuire*
Matthew P. McGuire
N.C. State Bar No. 20048
Kelsey L. Kingsbery
N.C. State Bar No. 51736
**ALSTON & BIRD LLP**
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
Telephone: (919) 862-2200
Facsimile: (919) 862-2260
matt.mcguire@alston.com
kelsey.kingsbery@alston.com

*Counsel for Plaintiff*
*Prime Mortgage Lending, Inc.*

# VERIFICATION OF COMPLAINT

I, Ryan M. Kerian, declare under penalty of perjury under the laws of the United States of America, and in accordance with 19 C.F.R. §§ 210.4 and 210.12(a) the following is true and correct:

1. I am Senior Vice President and General Counsel of Prime Mortgage Lending, Inc. ("Prime") and am duly authorized to verify this Complaint on behalf of Prime;

2. I have read the Complaint and am aware of its contents;

3. The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation;

4. To the best of my knowledge, information and belief founded upon reasonable inquiry, the claims and legal contentions of this complaint are warranted by existing law or a good faith argument for the extension, modification or reversal of existing law;

5. To the best of my knowledge, information and belief founded upon reasonable inquiry, the allegations and other factual contentions in the complaint have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Executed on January 25, 2018.

Ryan M. Kerian

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Sworn to and subscribed before me this 25th day of January, 2018.

NOTARY PUBLIC
My commission expires: 6/19/20

LINDA S. LEPAGE
Notary Public, North Carolina
Wake County
My Commission Expires
June 19, 2020